STONAM, Respondent, *vs.* WALDO *et al.*, Appellants.

1. By the contract sued upon, the plaintiff bound himself to winter a certain number of cattle for the defendant, and the defendant obligated himself to pay a stipulated sum for every head delivered in the spring "in good, thrifty order and condition." *Held*, the plaintiff could not recover for the keeping of any cattle that died, or were not delivered in good, thrifty order

and condition, although their death or ill-condition might not have been caused by any want of care on his part.

2. Where the question was, whether cattle had died from disease or from plaintiff's want of care, *it was held,* that a witness, who had taken cattle to winter from the same drove, might be permitted to state the condition through the winter of the cattle kept by him, what number of them died, in what manner he fed and took care of them, and how many had been affected with disease.

3. A witness will not be permitted to state the symptoms and appearance of cattle that die from want of feed, unless he is an *expert* in such matters.

*Appeal from Jackson Circuit Court.*

*Wood* and *Hicks,* for appellants.
*Napton,* for respondent.

RYLAND, Judge, delivered the opinion of the court.

This was a civil action, commenced by the plaintiff in the Circuit Court of Jackson county, against defendants, for wintering, feeding and taking care of cattle, under the following agreement: " Memorandum of an agreement entered into on second day of November, 1849, between David Waldo & Co., of Jackson county, Mo., and Samuel Stonam, of Clinton county, Mo. The said Samuel Stonam obligates himself to take of the said David Waldo & Co., two hundred and thirty-seven head of work steers or oxen, to be well wintered on corn and fodder, and delivered at such point in Jackson county as the said Waldo & Co. may designate, in the spring, at such time as they can do well on the prairie range; and the said Waldo & Co. obligate themselves to pay five and 50-100 dollars per head for every one delivered in good, thrifty order and condition; the said Samuel Stonam being liable for all steers that die from neglect or want of due attention, and for damages done by them, or such as escape; but not liable for any that die from accident or unavoidable causes. It is understood between the parties that said cattle are to be kept in such manner as to be in saleable condition, suitable for a trip to Santa Fé,

early in the spring, by the first day of April next, subject, at all times, to the direction of said David Waldo & Co., or their agents ; and if the cattle do not thrive for want of feed, it must be increased sufficiently, or the contract will be forfeited on the part of said Samuel Stonam. It is understood that the cattle are to be well attended to, in every respect ; to be salted regularly and sufficiently, and provided with plenty of good water. 237 head. Signed,

his

" SAMUEL ⋈ STONAM."

mark.

Plaintiff, in his petition, states that the true number of oxen received by him of defendants under the contract, was 232 head, and of this number 112 died whilst in the plaintiff's possession, of disease, and without any fault of plaintiff ; and states also, that plaintiff took all proper care of the oxen delivered to him, according to his contract, and on demand, returned to the defendants the oxen remaining alive, 120 head, and asks for judgment for reasonable compensation for his services, and for medicine, corn, fodder and salt given and fed to the 112 steers that died, valued at $616, and asks also for judgment for $5 50 per head for the 120 oxen returned to defendants.

Defendants, in their answer, admit the contract, and say plaintiff received of defendants the whole number of oxen mentioned in the contract, to-wit, 237 head, and deny that plaintiff wintered and took care of the oxen as required by his contract ; but on the contrary, that plaintiff fed, salted, wintered, watered and attended to said oxen so negligently and carelessly, that 126 head died and were wholly lost to defendants, and by which defendants sustained damage, and for which they ask judgment against plaintiff ; they also deny that the oxen, or any of them, were diseased. Defendants admit the return of 120 oxen, and deny that any of them were kept and attended to, as required by the contract, or that they were returned in the condition required by the contract ; but on the contrary, after the first of April, and when they were still poor

and not thriving, and wholly unfit for use by reason of plaintiff's negligence, defendants, to keep and save them all from dying, were compelled to take the remaining 120 head from plaintiff and place them in the care of others; and defendants deny plaintiff's right to any compensation.

On the trial, it was proved that plaintiff, Stonam, under the contract, received from defendants 232 head of cattle. It was also proved, that of this number, and whilst in plaintiff's possession, 112 died. It was also proved, that the remaining 120 head in the month of May, on demand, were delivered to defendants. Plaintiff then gave evidence conducing to show that he fed and took care of the cattle as required by the contract; and also gave evidence conducing to show that those that died, died of disease; and also evidence conducing to show, that the 120 head returned to defendants, were in thrifty order and condition, saleable, and suitable for a trip to Santa Fé. The defendants then gave evidence conducing to show, that plaintiff did not feed and take care of the cattle delivered to him, as required by the contract; but on the contrary, neglected them; and also conducing to show that the cattle that died, did not die from disease or accident, but died by reason of plaintiff's negligence and carelessness. Defendants also gave evidence conducing to show that the 120 head returned to them by plaintiff, were all of them poor and unthrifty, and that none of them were in thrifty order and condition, and none of them in saleable condition, or suitable for a trip to Santa Fé, at the time specified in the contract, or at any other time whilst in plaintiff's possession.

The following points were raised on the evidence. It was proved that the cattle received by the plaintiff from defendants, were taken from a large lot of oxen of defendants, which had the same fall crossed the plains from Santa Fé, and that Greer, the witness, had, at the same time with the plaintiff, received out of the same lot 230 head to be wintered for defendants, and that Leggett, a witness, at the same time, bought of defendants, from said lot of cattle, twenty head.

On the examination of said witnesses, defendants propounded

to each the following question: "What was the condition of the cattle through the winter, which the witness had kept, and what number of them died, and in what manner the witness had fed and taken care of them, and how many, if any, had been affected with disease?" This question was objected to by plaintiff. The court permitted the witness to tell the condition of the cattle when he received them, and what number died, and of what cause, and how many, if any, were diseased; but refused to let the witness tell in what manner he had fed and taken care of the cattle received by him, witness. Defendants excepted. Defendants also asked Clarkson, a witness, the following question: "What are the symptoms and what appearance do cattle exhibit that die from want of feed?" Plaintiff objected, and the court sustained the objection, and defendants excepted; and here the evidence was concluded.

Plaintiff asked the court to give the jury the following instructions:

1. That if they believe from the evidence, that plaintiff properly and regularly fed, watered and salted the oxen received by him under the contract, and that the defendants, by their agents, received or took a portion of such oxen out of his possession about the first of May, (either with or without his consent,) before the time said cattle could do well on the prairie range, then they must find for plaintiff, at the rate of five dollars and fifty cents per head for the oxen so taken or received; and if they further find that another portion of said oxen were delivered to, and received by said defendants, they must further find for plaintiff at the same rate for such oxen.

2. If they believe that the plaintiff properly and regularly fed, watered and salted the cattle received by him under the contract, and that, notwithstanding such attention, part of such cattle died from disease, and not from any neglect on plaintiff's part, then they will find for plaintiff, at the rate per head as aforesaid, for such oxen as died from such disease as aforesaid, up to the time of such death.

Defendants, at the same time, submitted and asked instructions as follows :

1. That by the contract between the parties sued on, and in proof, plaintiff was bound to keep the cattle delivered to him by defendants, in such manner as to be in saleable condition, suitable for a trip to Santa Fé early in the following spring, by the first day of April of that spring, and to return them in good thrifty order and condition ; and by said contract, defendants were liable to pay plaintiff for every one of said cattle so delivered and returned in good thrifty order and condition, five dollars and fifty cents a head ; and if the jury believe that said cattle were not kept by plaintiff in such manner as to be in saleable condition, suitable for a trip to Santa Fé by the first of April in the then following spring, and that said cattle were not then in good thrifty order and condition, but on the contrary, said cattle, all the time they were in plaintiff's possession, were in a bad, and unthrifty condition, and by plaintiff were kept in such a careless and negligent manner as not to be in a saleable condition, or suitable for a trip to Santa Fé by the first of said April, and during the whole of said spring, then in such case, defendants are not bound to plaintiff for the sum agreed on per head, but only for such sum and compensation as plaintiff reasonably deserved to have, after deducting from the same such amount of damages as defendants sustained by reason of such failure, carelessness and negligence of plaintiff.

2. That defendants by the contract sued on, and in proof, are liable and bound to plaintiff to pay him only for such of the cattle delivered by defendants to plaintiff as plaintiff returned to defendants or their agent, in good thrifty condition, in a saleable condition, suitable for a trip to Santa Fé ; and if said cattle and none of them were in such condition, by the first of said April mentioned in said contract, and were not in such condition at any time in the spring of that year, then, in such case, the jury must find for defendants.

3. If the jury believe from the evidence, that a large number of the cattle of defendants, by them delivered under the contract to plaintiff, died while in the possession of plaintiff, and so died from the carelessness, want of proper care and attention, or negligence of plaintiff, and not from accidental or unavoidable causes, in such case the jury must find for defendants, as against plaintiff's demand, the value of such cattle that so died.

4. That defendants are not bound by the contract sued on, and in proof, to pay plaintiff for feeding and taking care of any of the cattle that died in plaintiff's possession, before such cattle became in suitable condition for a trip to Santa Fé, and before the same were returned and delivered to defendants or their agent.

5. If the jury believe from the evidence, that the cattle, as well those that died as those that survived, delivered by defendants to plaintiff, were, during all the time, and up to the time they were delivered and returned to defendants' agent, in the month of May, 1850, in an unsaleable condition, and in an unsuitable condition for a trip to Santa Fé, and in such condition by reason of the negligence and want of due and proper care of the plaintiff, then and in such case, the jury must find for defendants.

The court gave the instructions numbered one and two, asked by plaintiff, and defendants excepted. The court also gave the instructions three and five, asked by defendants, and refused to give instructions asked by defendants, numbered one, two and four; and to the opinion of the court, in refusing said instructions one, two and four, defendants also excepted. The court also gave to the jury the following instruction: "The court instructs the jury that the plaintiff was bound by the contract read to them in evidence, to feed the cattle well on corn and fodder during the winter, and to attend to them well, to salt them regularly and sufficiently, and to give them plenty of water, so as to have them in good thrifty order and condition by the spring, and in a saleable condition, suitable for a

trip to Santa Fé by the first of April of the then following spring; and if the jury should find that the plaintiff failed to attend to the cattle well, and to feed, water and salt them well, as required, in consequence of which the cattle were not in good thrifty order and condition, and in a saleable condition, suitable for a trip to Santa Fé by said first day of April, they will find for the defendants; but if the jury should find that the plaintiff did feed, salt and water said cattle well, as required by the contract, and attend to them well, and that said cattle, in consequence of disease or other unavoidable causes, and not from any want of attention or care of plaintiff, were not in a thrifty condition and order, and in a saleable condition, suitable for a trip to Santa Fé by the said first day of April, they will, notwithstanding, find for the plaintiff.

To the giving of this instruction, defendants also excepted. The verdict of the jury was for the plaintiff for $800. The defendants made their motions for a new trial and in arrest, which were overruled by the court, and the defendants excepted and appealed.

From the above very full statement of the facts of the case, and of the instructions given and refused to be given, and of the rulings of the court in refusing to permit certain questions to be propounded to, and answered by the witnesses, Green, Leggett and Clarkson, it becomes important for this court to consider the proper construction of the contract between the parties, and the relevancy of such proposed testimony.

1. First, as to the contract : what is the thing to be done by Waldo & Co.? We see it distinctly written down that the said Waldo & Co. obligate themselves to pay five dollars and fifty cents per head for every ox delivered in good thrifty order and condition, at such point in Jackson county as the said Waldo & Co. may designate, in the spring following the date of the contract, at such time as the steers may do well on the prairie range. This is the amount of the obligation on the part of Waldo & Co. They are to designate the place for the

delivery in Jackson county—the time of delivery is to be some-time in the ensuing spring, when the range in the prairie would support the steers, and they are to pay for each head *delivered* the sum of five dollars and fifty cents. On the part of Stonam, the obligation is to receive from Waldo & Co. some two hundred and thirty head of work steers or oxen. He is to winter these cattle well on corn and fodder—that is, he is to feed these oxen well during the winter season, on corn and fodder, and to deliver them in the spring in Jackson county at the designated place. The steers were to be delivered by Stonam, and Waldo & Co. were bound to pay, not for each head delivered, but for each head delivered in good thrifty order and condition. By the contract, Stonam was liable for all the steers that died from neglect or want of due attention, and for damages done by them, or such as escape; but not liable for any that died from accident or unavoidable causes. The cattle were to be well kept, well attended to in every respect; to be salted regularly and sufficiently, and to be provided with plenty of water.

Now, it is the opinion of this court, that there must be a delivery under this contract to Waldo & Co., of the oxen, before the obligation rests on them to pay; and, unless Waldo & Co. have received, either by themselves or their agents, the cattle from Stonam elsewhere, the delivery must be in Jackson county. The delivery, too, must be of steers, in good thrifty order and condition. Then, for the delivery of all such steers, in good thrifty order and condition as shall be made to Waldo & Co., in Jackson county, in the following spring, and for all such as the said Waldo & Co. shall receive from said Stonam elsewhere, they are bound to pay said Stonam the agreed price of five dollars and fifty cents per head.

2. In this agreement, Stonam is bound for all such steers as die from neglect or want of attention, and for such as escape; but not bound for such as die from accident or unavoidable causes. Now, then, in construing this agreement thus, it is important to let in such testimony as will show the manner of

the wintering said steers, the feeding with corn and fodder, and the salting and watering them. It is important to show the care and attention bestowed upon them by said Stonam. In this transaction, it is stated that some 120 of the steers died. In order to show that there was no disease among the large drove of oxen, from which the number delivered to Stonam to winter had been taken, witnesses were called who had also taken cattle to winter from the same drove, and who had purchased of the same drove, and questions were propounded to them; these questions appear in the above statement of the case in this opinion. In the opinion of this court, the questions put to Green and Leggett, were proper, and should have been answered. These questions and answers may elicit facts from which very reasonable inferences may be drawn. There is no legal objection to the questions; the answers form only presumptions, but these may assist in coming to a proper conclusion of the matter by a jury.

3. The question to Clarkson was properly objected to, and the ruling of the court on this point is right; had there been any evidence, showing Clarkson's skill, knowledge and experience in keeping and herding and managing cattle, his knowledge of the diseases which prey upon them, and to which they are subject, and his practical experience in finding the causes producing death among cattle, the question might then have been put to him and his answer received in evidence. Had Clarkson been a veterinarian, then he might lawfully answer the question proposed; but as nothing appears warranting this court to presume that such was his occupation or profession, it was ruled by the court below correctly, in refusing his answer. It remains but to compare the instructions given, with the views here laid down, and see whether they accord with these views or not. Such as do not, should not have been given.

It may be considered important in the further trial of this case to state, that it is competent for the defendants to recover the damages, if there be any, which they have sustained by the negligence and carelessness, if there be any such, of the plain-

tiff in attending to the cattle. By the contract, as construed by this court, Stonam could only recover pay for the cattle delivered to Waldo & Co., and he is liable only for such as die through neglect and carelessness on his part, through his failure to attend to them well in every respect, under the terms imposed on him by his agreement, and for such as escape. Now the instructions given, which make Waldo & Co. liable for a part of the time the oxen were wintered, though these same oxen afterwards died, through unavoidable causes, not in the power of any one to prevent, and consequently were never delivered to Waldo & Co., were erroneous. The instruction given by the court, on its own motion, is erroneous.

The judgment of the Circuit Court is, therefore, reversed and remanded, with directions to proceed therein, in accordance with this opinion; the other judges concurring.