## AMERICAN PAPER PRODUCE COMPANY, Appellant, v. FRANK J. CARROLL et al.

Division Two, November 19, 1921.

1. **BREACH OF CONTRACT: Fraud as Defense: Pleading Scienter.** In an action for fraud the *scienter* must be alleged; but where the allegations of the answer show such facts and circumstances that the party making the false representations must have known whether or not they were true, they are sufficient without a direct allegation that they were known to be false.

2. ———: ———: **Failure of Evidence: False Weights.** The defense to plaintiff's suit for breach of a hauling contract that plaintiff "falsely and fraudulently represented that the weights of the loads actually hauled were grossly and largely below the actual weights," is not established by evidence which shows no misrepresentation of any weight actually ascertained, or by evidence which fails to show that plaintiff at any time knew or had reason to know that the estimated weights were incorrect, or by evidence which shows

that all the transactions were consistent with good faith, or shows merely a mistake, or at worst negligence in the weighing.

3. ————: Incorrect Weights: Good Faith: Instruction. In an action for breach of a hauling contract where the defense is that the weight of the goods hauled was falsely and fraudulently represented, an instruction which requires the jury to find that plaintiff "in good faith weighed same or ascertained the weight of same and in good faith gave defendants such weights with reasonable and substantial correctness" is error against plaintiff, in that it requires the jury to find that the weights were correct and were ascertained in good faith, and places upon him a burden he is not required to sustain. If the weights were substantially correct, it would not matter whether they were ascertained in good faith or not; if the goods were weighed in good faith and presented to. defendant in good faith, some lack of correctness in the weight, arising through mistake, would not vitiate the contract, where it provided the method by which mistakes might be corrected.

4. ————: Substantial Performance. Where a party seeking to enforce a contract, or seeking damages for its breach, can show substantial compliance, except some inadvertent or unintentional element which may be corrected, he will not be denied recovery for such breach.

5. ————: Counterclaim. In an action for damages for breach of a hauling contract defendant cannot recover on his counterclaim for goods hauled and not paid for, unless there is a finding that he had performed his contract, or a finding of facts that would excuse him from such performance.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

Reversed and remanded.

*Leonard, Sibley & McRoberts* for appellant.

(1) Fraud consists in bad intent, which must be alleged and proved. Moss v. Riddle, 5 Cranch (U. S.) 351. (2) Burden of proof to establish fraud is upon the one charging it. Bigelow on Fraud (Ed. 1877) p. 57; Anderson v. McPike, 86 Mo. 300; Smith on Fraud (1907 Ed.) sec. 267, p. 290. (3) Fraud is not to be presumed, and if conduct in question is equally consistent with

good faith and honesty it will not be held fraudulent. (4)   Knowledge of falsity, in the matter charged, is essential to fraud; so, without allegation and proof of such knowledge, there is no fraud. Moss v. Riddle, 5 Cranch, 351.   (5)   The plea in the answer here omits to allege knowledge by plaintiff of weights being incorrect, and hence the plea is insufficient. Reed v. Bott, 100 Mo. 62.   (6)   Parties may agree to adjust difference by such methods as section 9 of this contract describes, and parties cannot reject them and maintain an action despite their terms Dinsmore v. County, 60 Mo. 241; Williams v. Railway, 112 Mo. 463.   (7)   A general custom prevailing in any line of business is treated by the courts as entering into contracts in that line. Baer v. Glasner, 90 Mo. App. 289; Soutier v. Kellerman, 18 Mo. 509; Estes v. Shoe Co. 155 Mo. 585.; Grocery Co. v. Hart, 223 S. W. 794.   (8)   Defendants could not properly recover on their counterclaim, under the contract, without allegation or proof of performance thereof. There is neither; and hence the recovery thereon is error. Eyerman v. Assn., 61 Mo. 489.

*R. M. Nichols* for respondant.

(1)   Plaintiff sued upon an express contract, which bound it in the following language: "All goods or property hauled be weighed by the party of the second part, and a memorandum of such weights furnished to the party of the first part, which shall be conclusive and binding."   When it was shown that the plaintiff did not weigh a large part of the goods or property hauled, and universally did not weigh but a sample of a lot, defendant was excused from producing evidence of a "certified city weigher." Kreitz v. Egelhoff, 231 Mo. 703; West v. Freeman, 76 Mo. App. 96; El Paso Mill Co. v. Davis, 194 Mo. App. 1.   (2)   It is elementary that fraud vitiates everything. Defendants were sued for a breach of contract. They showed that the "weights furnished by the party of the first part, which should

be conclusive and binding," were fraudlent and fictitious weights. This showing constituted a violation of the contract on the part of the plaintiff, and there would be no obligation on defendants to get the weights of a "certified city weigher." Williams v. Railway, 112 Mo. 494. (3) If the "certified city weigher" could be held to be an arbitrator, the statute provides that such an agreement is not conclusive, and that suit can be brought and maintained under the ordinary rules of evidence, notwithstanding such arbitration agreement. R. S. 1909, sec. 395; Young v. Ins. Co., 269 Mo. 15. (4) When it was conclusively shown, partly by plaintiff's own witnesses, that a large part of the products to be hauled were not weighed, as plaintiff contracted to do, under the allegations of performance, and the general denial raising the issue, the plaintiff could not recover upon the contract sued on. It became unnecessary for the defendant to show that the goods were weighed, or that lower weights were given than the actual weights of the goods, except to support the allegation of fraudulent representation. Yeats v. Ballentine, 56 Mo. 530; Keith v. Ridge, 146 Mo. 97. The testimony showed that the loads were reweighed upon city scales; the presumption would be that they were weighed by a certified city weigher; if not, the burden to show that they were not so weighed shifted to the plaintiff. (5) The failure of plaintiff to weigh the products, which defendants were required to haul, and the presentation to defendants of the yellow sheets, containing the memorandums of fictitious weights, constituted a false representation. Defendants received these fictitious weights not knowing that they were false; acted upon such representations by hauling and charging, under the contract, four and one-half cents per 100 upon these fictitious weights. They were damaged thereby. Where there is any evidence of fraud, the question of fraud becomes one for the jury. Dyer v. Cowden, 168 Mo. App. 649; Devero v. Sparks, 189 Mo. App. 555; Owens v. Rector, 44 Mo. 389. (6) The *scienter* was sufficiently charged in the

allegations "that plaintiff falsely and fraudently represented and stated to the defendants the weights of the loads," and "that said false and fraudulent weights so given to defendants by plaintiff were so given for the purpose and with the intent," etc. Hoffman v. Gill, 102 Mo. App. 320; Adams v. Barber, 157 Mo. App. 385; Serrano v. Commission Co., 117 Mo. App. 195; Nauman v. Oberle, 90 Mo. 666. (7) If it could be said that the answer was defective in not alleging the *scienter*, its allegations were sufficient from which the *scienter* could be inferred, and the defect would be cured by verdict, the presumption being that the facts, imperfectly alleged, were proven. R. S. 1919, sec. 1550; State to use v. Webster, 53 Mo. 135; Pry v. Railway, 73 Mo. 132; People's Bank v. Scalzo, 127 Mo. 164; Seckinger v. Mfg. Co., 129 Mo. 590; Tomasson v. Ins. Co., 217 Mo. 485; Robinson v. Levy, 217 Mo. 498. (8) There was no error in excluding the evidence of a custom of weighing one bundle and guessing at the balance, because custom was not pleaded. Hayden v. Grillo's Admr., 42 Mo. App. 1; Sietz v, Nix, 216 S. W. 793; Staroske v. Pub. Co., 235 Mo. 67. (9) Custom, however, could not vary the express stipulation in the ninth clause of the contract. Goodfellow's Exr. v. Meeghan, 32 Mo. 280; Wolff v. Campbell, 110 Mo. 114. (10) There are allegations of proof and performance of the hauling by defendants under the contract in the counterclaim, and this before defendants were compelled to abandon it. If plaintiff now seeks to question defendants' right to sue upon the contract, the question should have been raised by demurrer and by motion in arrest, neither of which were filed, and therefore such question of the record is waived. R. S. 1919, sec. 1230 and 1550; McGannon v. Ins. Co., 171 Mo. 154; Sid v. Railway, 211 Mo. 411.

WHITE, C.—In this action the plaintiff demands damages for breach of contract. In 1917 the plaintiff was engaged in the manufacture and sale of paper prod-

ucts, in the City of Saint Louis. The defendants conducted a drayage and express business. November first, 1917, the plaintiff and the defendants entered into a contract whereby the defendants, for a consideration of four and one-half cents per hundred pounds, agreed to haul, for three years from that date, the finished products of the plaintiff to any place in the cities of Saint Louis and East Saint Louis, as directed by the plaintiff.

Plaintiff's petition alleges that the defendants undertook to carry out the terms of the contract, but at no time furnished sufficient equipment to comply with same, and on December 14, 1917, the defendants repudiated said contract and refused to perform it.

The petition further avers that the plaintiff kept and performed all the terms and obligations of the contract to be performed by it; that it was compelled to get other teamsters and draymen, at increased prices of from four to six cents per hundred weight, to do the hauling which the defendants had contracted to do. Judgment for twenty thousand dollars is prayed. The contract sued on was attached to the petition as an exhibit.

Besides a general denial the answer pleads several defenses:

First, that the plaintiff ought not to maintain its suit because it first violated the contract sued on, in this:

"The plaintiff falsely and fraudulently represented and stated to the defendants that the weights of the loads which the defendants were hauling under the provisions of the contract to be grossly and largely below the actual weight of said loads . . . and that the said false and fraudulent weights so given to the defendants by the plaintiff were so given for the purpose and with the intent of having defendants haul said loads at a rate or price far below the rate agreed to be paid said defendants for their services in hauling said freight."

second, that the plaintiff failed to supply the defendants with the loads of freight wherewith to load the trucks which the defendants were required to furnish and did furnish at the plaintiff's place of business, and

that defendants were greatly damaged by the delay and loss of time.

Third, a counterclaim setting forth an account showing the goods hauled during the month of December, 1917, and not paid for by the plaintiff, amounting to $87.54, for which the defendants asked judgment.

One part of the contract about which the controversy largely turns is the ninth paragraph, as follows:

"It is mutually agreed that the compensation to be paid to the party of the first part by party of the second part is to be four and one-half cents per hundred pound weight, and it is agreed that all goods or property hauled be weighed by party of the second part and a memorandum of weight furnished to party of the first part, which should be conclusive and binding, except that said goods and property may be reweighed by certified city weigher and then such weights should be conclusive."

The plaintiff introduced in evidence the contract and the letter by which the defendants repudiated it December 4, 1917, as follows:

"St. Louis, Mo., Dec. 14, 1917.

"American Paper Products Co.,

2nd & Bremen St.,

Mr. Pollack,

Dear Sir:

"On November 1, we started to deliver your goods to various places in the city. We have not weighed any of our loads up unto December 12, on said date we hauled five loads and weighed three, and found same to be from five hundred to nine hundred pounds over weight. On December 14, we hauled five loads, weighed all of them and found them to be correct.

"It would not pay us to have to weigh every load, therefore we will discontinue your hauling on Saturday evening, December 15, 1917.

"Yours truly,

"F. J. CARROLL & SONS."

The plaintiff then introduced  evidence as to the amount of freight which had been hauled for it from the time of the alleged breach of contract up to the thirty-first of May, 1919, and the amount paid for such hauling, to show that the plaintiff had been obliged to pay $3755.46 more for such hauling than, under the terms of the contract, it would have had to pay defendants for the same hauling. Plaintiff sought to show that its business was increasing, and that it would continue to have to pay more than the contract price for such hauling in the future.

The defendants introduced testimony to show that the price of hauling had not increased during the time that followed their refusal to carry for the plaintiffs, but that such freight could be hauled as cheaply at all times as by the contract they had agreed to haul it, and for that reason the plaintiff was not damaged.

After the fourteenth of December, 1917, the defendants hauled no more freight under the contract.

The evidence was conflicting as to whether the plaintiff failed to furnish the defendants proper facilities for loading the freight upon the trucks which the defendants had for the purpose. The defendants offered evidence in support of their allegations of fraud which would discharge them from obligations under the contract. This evidence will be noticed more fully in considering its sufficiency to submit that issue of fact to the jury.

That the plaintiff had not paid for the hauling during the month of December, the account for which was correctly stated in the counterclaim, was admitted; it claimed it was not obliged to pay that amount because the defendants had breached their contract by failing to haul goods after December 14th. This was the subject of defendant's counterclaim.

The jury returned a verdict in favor of the defendants on plaintiff's cause of action, and in favor of defendants upon their counterclaim for $87.54, and the plaintiff appealed.

I.    The appellant contends that the issue of fraud improperly was submitted to the jury because the answer did not sufficiently allege fraud. The facts alleged constituting fraud, as set out above, show that the plaintiff "falsely and fraudulently represented" the weights to be below actual weights, "for the purpose and with the intent of having the defendants haul said loads at a rate or price far below the amount agreed to be paid." It is claimed that the allegation is insufficient because it fails to state that the plaintiff knew that the weights presented were false. In an action for fraud the *scienter* must be alleged. [Remmers v. Remmers, 217 Mo. 1. c. 557.] But where the allegations of the answer show facts and circumstances such that the party making the misrepresentation must have known whether or not they were true, it is sufficient without a direct allegation of knowledge. [12 R. C. L. p. 421; Adams v. Barber, 157 Mo. App. 386-387, and cases cited.] Here the allegation that the plaintiff misrepresented the weights of the different loads which it shipped and which it claimed to have weighed, with the intent to deceive the defendant as to such weights, is sufficient allegation of knowledge, since no objection to the answer appears to have been made before the trial.

*Pleading Scienter.*

II.    It is further claimed by the plaintiff that there was no evidence of fraud. The plaintiff had no large scale upon which to weigh a truck load, but had small scales upon its platform, upon which it could weigh only a small part of a load; this was fully known to the defendants and to the defendants' drivers. The method employed by the plaintiff in weighing the products was this: The goods were done up in bundles of uniform size, and these bundles were made up of corrugated fibre-board boxes; one of the bundles was weighed and the weight multiplied by the number of bundles of the same description, in order to get the weight of the total load. Where there were boxes and bundles

*Fraud.*

of diffierent sizes, a bundle of each size was weighed and multiplied by the number of bundles or boxes of that kind and size. The evidence sufficiently shows that the method was known to the drivers of the defendants, and that Frank J. Carroll himself was present at times when the loading was done and had opportunity to observe the method of weighing.

The defendants further introduced as a witness one Henry Huhn, who was employed by the plaintiff and during part of the time weighed the freight which was delivered to the defendants' drivers. This witness quit the employ of the plaintiff December fourth. He testified that he attended to the weighing for the plaintiff and weighed as indicated above, and continued:

"My duty was to weigh products to be shipped or know they were weighed; not the entire shipment was weighed; a bundle of each, and we would estimate the weight of the rest and put it down on the shipping tickets [ticket shown]; part of this ticket is in my handwriting, December 5th, the day I left there; it shows twelve loads were hauled that day; the ticket of December 4th shows nine loads; the number of loads hauled per day depends on how many .teams and trucks were in use, and they would make at least two trips a day; the ticket of December 3rd, in my handwriting, shows fifteen loads; the weights on each load are given: for most of the loads they weighed one bundle and multiplied the number of bundles; some were not weighed at all, they went by a fixed weight we had there; all the loads to the International Shoe Company were measured by a fixed weight, and put down on the ticket as though they had been weighed; when one bundle was weighed and the rest multiplied the result was represented on the tickets as the total weight for the shipment; a good many shipments were on the fixed weight proposition; considerable goods to the Excelsior Box Company and to Hamilton-Brown Shoe Company were weighed the same way; the weight per bundle was given us;

in those cases we did not weigh the bundles, but the figures of the weights were put on these slips as if they has been weighed; Carroll hauled all the shipments on the sheets you just showed me; on the sheet of December 1st two loads of stuff hauled by Carroll are items of fixed weights, not weighed at all, consigned to the International Shoe Company; we put down the weights based on those per bundle weights we had on the card; did not call Carroll's attention to that fact; the sheet of November 30th shows fifteen loads of which three loads are of fixed weights, not weighed at all, sent to the International Shoe Company.''

The witness then went into detail as to the amounts of some of the loads hauled in the manner indicated, and then testified:

'"We had a list at the shipping desk of the weight per bundle of each style, and that list was used during all my time, and I guess since; the weights varied; they would run from forty to about ninety pounds a bundle; the dray ticket of November 23, 1917, shows sixteen loads hauled that day, including one load to International Shoe Company weighing about 11,000 that was not actually weighed; it was weighed as we always weigh them; ticket of November 22nd shows twelve loads, and five loads not actually weighed, to the International Shoe Company; followed same course; there were two or three large customers getting similar classes of goods, handled in about the same manner; in those cases we had the weight per bundle and used the same weight on a January order in April; most of the time the space was so jammed that we could not get the factory truck loaded with goods near the scale; all I could do was to take the weight he brought out; the limited storage space and making a warehouse out of a shipping platform was the cause.''

The defendants introduced evidence to show that three loads were hauled in December, which weighed from six hundred to a thousand pounds more than the amount stated by the plaintiff.

As shown above, the weights were arrived at by two methods: one by taking boxes of equal size and appearance, weighing one of them and multiplying by the total number. The other was to take the "fixed weight," that is to say, the weight of one of several boxes of like appearance and size, as shown by some previous ascertainment of its weight, and from that "fixed weight" estimate the weight of the total number of boxes.

It would not matter whether the weight of one box of a kind was ascertained at the time, or whether it had been ascertained previously and the weight fixed, if that weight was ascertained and determined in good faith. There is no intimation anywhere that the weight of the boxes which were actually weighed were not correct, or that the fixed standard of weight, applied to certain boxes which were not weighed at the time, was not fixed in good faith.

While article 9 of the contract provides the manner by which the defendants, if not satisfied with the weights, might have the loads re-weighed, the defendants were not obliged to pursue the exact method, but might show by any other method that the weight was wrong, and it would be for the jury to say whether it was shown successfully.

It appears from Huhn's testimony that the boxes and bundles of apparent uniform size and weight did not in fact weigh exactly alike; that is, some weighed a little more than others. By the method of weighing the advantage might have resulted either to the plaintiff or to the defendant. The defendants found some loads in which the weight was greater than the estimate showed; they likewise found some loads in which the estimate was correct; it is quite possible and even probable that if they had weighed all the loads they would have found some of them in which the advantage would have been to the defendants instead of to the plaintiff.

It is significant that, when the defendants repudiated the contract by their letter of December 14th, they didn't claim any intentional misrepresentation as to the loads,

but they claimed only that they could not carry out the contract because they could not afford to have the loads re-weighed. The evidence upon which the defendants rely to show fraud does not show that there was any misrepresentation any time of any weight actually ascertained, or that the plaintiff at any time knew or had reason to know that the weights which it estimated were incorrect. All the circumstances of the entire situation are consistent with good faith and show merely a mistake, or, at most, negligence in weighing. We conclude that the evidence to sustain the allegation of fraud entirely lacked the element of fraudulent intent and knowledge of the erroneous weights.

III.    The court instructed the jury upon the issues presented by the answer, and among other instructions, of its own motion gave instruction number one:

Correctness and Good Faith.

"The court instructs the jury that if you believe from the evidence that plaintiff and defendant entered into the contract, dated November 1, 1917, mentioned in the evidence; that defendants began hauling freight and finished products or goods of plaintiff under said contract and continued doing so up to about December 15, 1917; that plaintiff kept and performed all the provisions and conditions of said contract on its part to be performed and provided with reasonable promptness and without unreasonable delay to defendants finished products or freight for defendant to haul, *and in good faith weighed same or ascertained the weight of same and in good faith gave defendants such weights with reasonable and substantial correctness;* and if you find from the evidence that defendants failed to provide at plaintiff's factory at all times a sufficient number of trucks or teams to take care with reasonable satisfaction of plaintiff's hauling, and failed to haul such finished products and freight, if any, with reasonable promptness and dispatch, and finally on or about December 14 or 15, 1917, defendants refused to haul any more such

finished products and freight, and refused to recognize
further the contract or be bound by same, and that plain-
tiff was caused damage directly thereby, then your ver-
dict will be for plaintiff.''

The plaintiff offered and the court refused an in-
struction similar in purport and almost identical in lan-
guage to instruction number one except that part in
italics. The appellant claims there was error in refusing
the instruction as asked and in giving instruction num-
ber one in lieu of it. It will be noticed that that part
of the instruction in italics requires the jury to find
that the plaintiff ''in good faith weighed same or ascer-
tained the weight of same and in good faith gave the
defendant such weights with reasonable and substantial
correctness.''

This instruction places a burden upon the plaintiff
which it was not required to sustain. If the weights were
ascertained by the plaintiff and furnished to the defend-
ants with substantial correctness, it would not matter
whether they were ascertained in good faith or not. That
would be the end of the matter. On the other hand, if the
freight was weighed in good faith and presented to the
defendants in good faith, some lack of correctness in
the weight, arising through a mistake, would not vitiate
the contract, because the contract itself provided the
method by which mistakes might be corrected. Besides,
it is not every inconsiderable breach of a contract on the
part of one party to it which will discharge the other
party from complying with it. Where a party seeking to
enforce a contract, or seeking damages in its breach, can
show substantial performance, except some inadvertent
or unintentional element which may be corrected, he will
not be denied recovery for such breach. [6 R. C. L. p.
967; Bushnell v. Boyers, 146 Mo. App. 200; Kreitz v.
Egelhoff, 231 Mo. 703.] If the plaintiff in good faith
weighed the product to be hauled by the defendants and
presented the result to the defendants in good faith, be-
lieving it to be correct, and it proved to be incorrect, there
certainly would be no fraud, and the plaintiff would not

be denied recovery on that ground. The defendants had a remedy to enforce payment for weights actually hauled, if acertained to be incorrectly presented.

The instruction required a finding both of *correctness* in the weights and *good faith* in ascertaining them, whereas a finding of *either* was sufficient to authorize a verdict for plaintiff. Therefore, the instruction was erroneous.

IV.  The defendants recovered judgment in the sum of $87.54 on their counterclaim for the hauling which they did during the month of December before they quit the job. The principle of law which the defendant urges as preventing a recovery by the plaintiff on its cause of action applies here. The instruction by which that matter was submitted to the jury authorizes a recovery by the defendant upon its counterclaim, *according to the contract*, without requiring a finding that the defendants had performed their contract, or a finding of the facts which would excuse them from such performance. There was, therefore, error in submitting that issue to the jury in that manner.

Other errors are assigned, which we deem it unnecessary to consider, as it is unlikely that the same circumstances will occur again.

The judgment is reversed and the cause remanded. *Railey* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur; *Walker, J.,* in the result.