McALPINE COMPANY, a Corporation,
Appellant-Respondent,

v.

Walter GRAHAM, Respondent-Appellant.

Nos. 29865, 29866.

St. Louis Court of Appeals.

Missouri.

Feb. 17, 1959.

Motion for Rehearing or for Transfer
to Supreme Court Denied
March 13, 1959.

W. W. Sleater, III, St. Louis, for respondent-appellant.

William A. Boles, St. Louis, for appellant-respondent.

HOUSER, Commissioner.

This case, a suit on a written contract, comes to the writer on reassignment. The McAlpine Company sued Walter Graham for the agreed price for supplying and installing aluminum awnings and storm sash at the Graham residence. Defendant filed a counterclaim. The Circuit Court of St. Louis County dismissed defendant's counterclaim at the close of all the evidence, and from that order defendant appeals. A trial jury disallowed plaintiff's claim on its petition and awarded defendant the sum of $52 (the amount of defendant's down payment on the contract). From the ensuing judgment plaintiff appeals.

Plaintiff's petition alleged that the parties entered into written contracts for the construction and installation of awnings and storm windows at agreed prices of $128 for awnings and $399 for windows; that defendant made a down payment of

$52 on the windows; that plaintiff demanded and defendant refused to pay for the awnings or the balance due on the windows. Plaintiff prayed for the amounts due plus attorneys' fees, for which provision was made in the contract. Defendant's answer admitted the execution and terms of the alleged contract but denied liability for the amount claimed, on the ground of non-performance by plaintiff of its part of the contract. Defendant alleged that because of plaintiff's non-performance "defendant's time for performance has not arisen." Defendant's counterclaim alleged that defendant was induced to enter into the contract by false and fraudulent representations of plaintiff that the work would be done in an expert manner and that a certain type of storm window would be installed, and that plaintiff misrepresented the time of the installation. Defendant further alleged reliance by defendant and for damages counted upon the down payment of $52, heat loss, harassment and annoyance, and expenditures for attorneys' fees. Defendant prayed separately for actual and punitive damages and attorneys' fees.

Plaintiff's evidence tended to show the existence of the written contract, delivery and installation of the sash and awnings in compliance with the contract, proper installation, refusal of defendant to pay on the ground that the installation was defective, efforts to cure the defects ·and satisfy defendant, and defendant's refusal to permit plaintiff's contractor to correct deficiencies in the work.

Defendant's evidence tended to show representations that plaintiff had the finest material, installation and workmanship available and that plaintiff manufactured and installed the products; the untruth of the representations; notice to plaintiff that special problems were involved because defendant's windows were not "square," plaintiff's assurances and subsequent derelictions· with respect thereto; that defendant contracted for overall cover and not the "piggy back" type of installation on the casement windows but that plaintiff provided "piggy back" cover in violation of contract; failure of the sash to fit, open or close properly; defects and omissions in caulking; unsightly hammer marks on the aluminum; improper installation of screws, awnings, windows (some of which were installed backwards, and many of which would not lock); inability to open casement windows, heat loss, etc. Defendant further showed that complaints were made and that plaintiff's representatives often stated they would "see to it." Six or eight months after installation plaintiff's representatives inspected the premises, agreed that the windows were not properly installed, caulked, etc. and made a date to come back the following Monday to correct the deficiencies. Plaintiff's representative came to defendant's house on the Saturday before the Monday when he was ·due, but defendant told him to leave the premises because he had not appeared at the appointed time. The workman did not return on the following Monday or at any time thereafter. Defendant then waited for plaintiff to make the next move. Defendant testified that he had tried to give the storm sash back to plaintiff every time they discussed the matter and that he told plaintiff ."either fix them or take them back." He wanted it done right and was in hopes that they would finish the job, do it right, and fix the windows as originally planned, but when he saw what they had done he preferred that they "take them back," but "they would not come back."

*Plaintiff's appeal:* The judgment against plaintiff and for defendant for $52 on plaintiff's petition should be reversed for the following reasons:

First, there was no basis in the pleadings for the allowance to defendant of the amount of his down payment on the contract. Plaintiff's motion for a directed verdict on defendant's counterclaim had been sustained. Defendant's only remaining pleading, the answer, contained no prayer for restitution, reimbursement or damages.

Second, Instruction No. 2 was erroneous. No. 2 was intended to hypothesize the defense of recoupment, by which defendant sought to extinguish plaintiff's claim by proof of defective performance. Talbot-Quevereaux Const. Co. v. Tandy, Mo.App., 260 S.W.2d 314. No. 2 failed to hypothesize a set of facts as the basis for a verdict for defendant for failure of plaintiff to perform its contract in a good and workmanlike manner under the rule of substantial performance. Cross v. Robinson, Mo.App., 281 S.W.2d 22, and cases cited loc. cit. 25. No. 2 improperly assumed (1) that there was a failure to properly or completely install, (2) that there were existing defects, (3) failure on plaintiff's part to correct defects, and (4) by implication that the defects were sufficiently substantial and material to entitle defendant to refuse to perform his obligations under the contract, without requiring the jury to so find. While "full performance" on its part is required before plaintiff is entitled to recover on the contract, Hadley-Dean Glass Co. v. Kay, Mo.App., 118 S.W.2d 31, literal and precise performance is not demanded. "Slight or trivial defects, imperfections or variations will not bar him of his action on the contract, if he has made an honest endeavor to comply and has substantially done so." Boteler v. Roy, 40 Mo.App. 234, loc. cit. 238; American Paper Products Co. v. Carroll, 290 Mo. 204, 234 S.W. 803; Cross v. Robinson, supra. No. 2 contained no standard or guide by which the jury could determine whether the defects were of sufficient substance and materiality to say that plaintiff had substantially failed to perform the contract, thereby entitling defendant to refuse to perform on the ground that plaintiff had not fully performed. Furthermore, No. 2 directed a verdict on a theory akin to that of rescission. The philosophy of the instruction is absolution of defendant from any and all liability under the contract and restoration of the down payment to defendant upon a finding of nonacceptance by defendant of improperly installed and defective sash and awnings, failure of plaintiff to correct the defects, and failure of plaintiff to comply with defendant's instruction to either fix or take back the sash, etc. Restoration of whatever of value is received under a contract is one of the incidents of rescission, 17 C.J.S. Contracts § 442. The theory of rescission is a stranger to the lawsuit, unheralded in the pleadings, unsupported in the evidence and renounced in defendant's brief on appeal. Non-performance by plaintiff of an existing contract excusing defendant from his obligation to perform, and not disaffirmance and annulment of the contract, is the pleaded theory of defense and is the gist of defendant's evidence and appellate theory. Totally lacking is any proof of an unequivocal and unconditional act of disaffirmance of the contract. The giving of a verdict-directing instruction without any foundation in the pleadings or evidence is reversible error. Finally, No. 2 wholly ignored the question of prevention, an issue possibly determinative of the case, on which the parties introduced evidence pro and con. The question of prevention was recognized in plaintiff's verdict-directing Instruction No. 1, in which the jury was permitted to find for plaintiff notwithstanding failure to comply with the contract in one or more particulars, if the jury found that defendant retained and used the sash, etc. and had not within a reasonable length of time offered to return and that defendant had "prevented plaintiff from making corrections to said awnings and storm sash." Certainly if defendant forbade or would not permit plaintiff to correct deficiencies in the work plaintiff could recover as if it had performed the contract. Reid v. Kelly, Mo.App., 300 S.W.2d 542, and cases cited. Defendant himself admitted that he ordered plaintiff's contractor "to put his tools back in his box and travel" when he found him at the house on Saturday, measuring the windows for parts to be brought out the following Monday. No. 1 submitted the

question of prevention but No. 2 ignored it and in so doing failed to incorporate an element necessary to the maintenance of the defense, in view of defendant's statements and admissions relating to prevention.

 *Defendant's appeal:* The order of the court directing a verdict for plaintiff on defendant's counterclaim should be affirmed for the reason that the counterclaim does not state a claim of fraud upon which relief can be granted. The representation that plaintiff's men were experts in the field and that the work would be done in an expert manner is not a representation which may form the basis of a claim of fraud. It constitutes a mere expression of opinion or "puffing" which is not actionable. Lowther v. Hays, Mo.Sup., 225 S.W. 2d 708; 37 C.J.S. Fraud § 13. The representation that overall storm windows would be installed, followed by installation of "piggy back" sash, does not lay the foundation for a claim of fraud, which ordinarily cannot be predicated upon unfulfilled promises. Acy v. Inland Sec. Co., Mo.App., 287 S.W.2d 347. The representation that the awnings would be installed by June 12 and the sash by four or five weeks after May 20 forms no basis for a claim of fraud. Representations, although false, which relate to something to be done in the future cannot be made the basis of a charge of fraud. Grand Lodge of United Brothers of Friendship and Sisters of Mysterious Ten v. Massachuetts Bonding & Insurance Co., 324 Mo. 938, 25 S.W.2d 783, 788. Incidentally, the awnings were installed June 8 and the sash was installed in July, so there was no substantial default in any event, time not having been agreed upon by the parties as of the essence of the contract.

Accordingly, the Commissioner recommends that the order on the counterclaim be affirmed and that the judgment on the petition be reversed and the cause remanded for a new trial on the issues joined by petition and answer, unless the parties are advised to amend their pleadings on remand.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order on the counterclaim is, accordingly, affirmed and the judgment on the petition reversed and the cause remanded for a new trial on the issues joined by petition and answer, unless the parties are advised to amend their pleadings on remand.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.