Gordon A. GUNDAKER, Jr., d/b/a
Gordon A. Gundaker Real Estate
Company, Appellant,

v.

Jerry J. TEMPLER and Karen M.
Templer, Respondents.

No. 38549.

Missouri Court of Appeals,
St. Louis District,
Division 3.

Dec. 6, 1977.

William C. Wefel, St. Louis, for appellant.

James L. Homire, Jr., St. Louis, for respondents.

WEIER, Judge.

The defendants, Jerry J. Templer and Karen M. Templer, were the owners of certain real estate in St. Louis County. Wishing to sell this property, they entered into an exclusive listing contract with the plaintiff, Gordon A. Gundaker, Jr., a licensed real estate broker. This contract, which was a form provided by plaintiff, read in part as follows:

> "If within three (3) months after date of this listing, a ready, willing and able purchaser is produced by the undersigned Realtor, or by us, [owners] or by any other person, or if said property shall be contracted by us to be sold to, leased to, or exchanged with any person procured by the undersigned Realtor, or by us, by any other person, or if within an additional term of two (2) months the property is

contracted, by us to be sold to, leased to, or exchanged with anyone contacted by or through said Realtor within the first period, and registered in writing with us within ten (10) days following the expiration of the first period, we will pay said Realtor a commission on the total selling, leasing, or exchange price of 6%."

The contract was dated July 13, 1972, and thus the initial three month period expired on October 12, 1972. The additional two month period ran from October 13, 1972 to December 12, 1972. During the initial three month period, Gundaker interested a Robert L. West, Jr., and a Terene M. West in buying the Templer property. The Wests made three successive offers to buy the property, each time having the plaintiff submit to defendants a written earnest money contract. The Templers responded to these offers by making counteroffers. Thus on August 22, 1972, the Wests offered to pay $30,000 for the property and the Templers answered by offering to sell for $34,900. On August 30, 1972, the Wests offered to buy for $31,200 and the Templers offered to sell for $34,500. On September 22, 1972, the Wests offered to buy for $32,500 while the Templers offered to sell for $33,500.

No agreement was made until, on October 25, 1972, the Wests and the defendants, acting on their own, contracted to sell the property for $32,500. The property was actually conveyed to the Wests by deed from the Templers dated November 27, 1972, and recorded December 1, 1972. The defendants refused to pay Gundaker any commission on the sale. He sued for the 6% commission mentioned in the listing contract in magistrate court, where judgment was entered for the Templers. He then appealed to circuit court, where the above facts were established through discovery proceedings. Both parties filed motions for summary judgment. The circuit court denied Gundaker's motion and granted Templers' motion. On appeal from that judgment to this court, plaintiff seeks to reverse the court's judgment and remand for an entry of judgment in his favor.

It is beyond doubt that the eventual buyers of defendants' property were contacted by and through the plaintiff real estate broker within the initial three month period under the listing contract and that the property was both contracted to be and actually sold to these buyers within the additional two month period. The issue in this case is whether the plaintiff substantially complied with that portion of the listing contract making the payment of commission on a sale within the additional two month period dependent on the broker's registering in writing with the property owners the eventual buyers within ten days following the end of the first or three month period and whether such compliance was sufficient. The plaintiff concedes that he did not literally comply with the terms of the contract, such literal compliance requiring by the unambiguous terms of the listing contract that he give the defendants during the period from October 13 to October 22, 1972, a list of the names of those potential buyers he had contacted within the three month period. The plaintiff contends, however, that by submitting the three written offers, each of which had the Wests' name on it, during the three month period, he substantially complied with the requirements of the contract and thus is entitled to commission on the sale. The defendants also agree that the plaintiff did not literally comply with the unambiguous terms of the contract. They contend, however, that substantial compliance, if it existed, was insufficient because literal compliance was the intent of the contracting parties as was shown by the clear and unambiguous language of the contract; and thus plaintiff's failure to so comply with the contract was justifiably relied on by the defendants as a basis for their action in reducing the sale price to a previously unacceptable level because no commission would be due on the sale.

■ Before turning to the question of substantial compliance, we must answer the plaintiff's additional contention that he is entitled to his commission merely because he was the procuring cause of the sale.

Such a contention would have probably resolved this case if appellant had sued on quantum meruit or on a general listing contract, but here the action was brought on a special contract, one fixing by its own terms when a commission is to be paid, and for that reason appellant's right to a commission must be governed solely by those terms. *See E. A. Strout Realty Agency, Inc. v. McKelvy*, 424 S.W.2d 98, 101[1] (Mo. App. 1968); *Nichols v. Pendley*, 331 S.W.2d 673, 675–76 (Mo.App. 1960).

■ Before we determine if there has been substantial compliance with this contract, we must determine what literal compliance, which both parties agree did not occur here, would have entailed. The key phrase in the contract is "registered in writing with us within ten (10) days following the expiration of the first period." "Register" is defined in Black's Law Dictionary (Rev. 4th edition, 1968) as "[t]o record formally and exactly; to enroll; to enter precisely in a list or the like." As used in this real estate contract between private parties, this phrase is reasonably susceptible of only one construction, that of entering the names of prospective customers precisely in a list. Since this phrase is susceptible of only this one construction, it is unambiguous and its meaning is a matter of law for the court to decide. *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264[1–9] (Mo. banc 1973).

■ Certainly, plaintiff at no time gave defendants a list with the Wests' name on it and so he did not literally comply with the registration provision of the contract. Defendants contend such literal compliance was necessary here and substantial compliance was not enough. Many Missouri cases, however, have held that substantial compliance with a contract is enough to entitle a plaintiff to recover for his performance under it, including at least one case that has applied this substantial compliance rule to an action for a commis-

sion on a real estate contract. *See, e. g., McAlpine Company v. Graham*, 320 S.W.2d 951, 954[4] (Mo.App.1959); *Fredericktown Chamber of Commerce v. Chaney*, 250 S.W.2d 820, 824–25[6, 7] (Mo.App.1952); *Meyers v. Kilgen*, 177 Mo.App. 724, 160 S.W. 569, 572[1, 3] (1913); *Clough v. A. J. Stillwell Meat Co.*, 112 Mo.App. 177, 86 S.W. 580, 582 (1905). In accordance with this general rule, we find substantial compliance, if it existed, to be enough here. It might be different if there had been an express provision in the contract requiring literal compliance, but no such provision was included. In the absence of such a provision, we cannot find that it was the parties' intent to require literal compliance. Therefore, we must find that the defendants were not justified in relying on a lack of literal compliance by the plaintiff to reduce their sale price.

■ Having found that substantial compliance would be enough here, we must determine [1] if plaintiff substantially complied with the registration provision when he submitted three written offers to the defendants, each offer containing the name of the eventual buyers, the Wests. There is no Missouri law directly on point. But the cases generally define what constitutes substantial compliance. A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance. *McAlpine Company v. Graham, supra* at 954[4]; *Fredericktown Chamber of Commerce v. Chaney, supra* at 825; *Clough v. A. J. Stillwell Meat Co., supra* at 582. Here the distinction between a written list with the buyers' name on it and a written offer with their name on it is trivial. Moreover, the benefit to be received by defendants by being given a list was received by them by being given a written offer. That benefit was written notification of those customers whom the plaintiff had contacted during

---

1. Ordinarily, the question of the existence of substantial compliance is one for the jury, *Meyers v. Kilgen, supra*, 160 S.W. at 572[3], but here the facts claimed to constitute substantial compliance are not in dispute and we believe that only one reasonable conclusion can be drawn from them, making this a question for the court.

the first three month period and whom the defendants could not sell to within the second two month period without being liable for a commission. Giving defendants a list, in addition to the written offers, would have served no practical purpose. In support of our decision, we cite cases from other jurisdictions concerned with similar contract provisions. *Hyde Park-Lake Park, Inc. v. Tucson Realty and Trust Co.*, 18 Ariz.App. 140, 500 P.2d 1128, 1130–31[1] (1972) (submitted in writing); *Schwartz v. Weinstein*, 104 N.J.L. 368, 140 A. 418 (1928) (reported in writing); *Briggs v. Henley*, 319 S.W.2d 453, 455–56[2] (Tex.1958) (advised in writing); *L. W. Smith and Co. v. Romadka*, 261 Wis. 374, 52 N.W.2d 797, 798[3] (1952) (filed in writing), *as limited by Dunn and Stringer Inv. Co. v. Krauss*, 264 Wis. 615, 60 N.W.2d 346, 348 (1953). Even without these cases, however, we believe our reasoning to be sound.

The final aspect of the substantial compliance question left to be addressed concerns time. In all the cases cited above, the act which the courts considered to be in fulfillment of the writing provision of the contract took place within the time specified in the contract. Here, however, the written offers were submitted before the time specified in the contract, for they were submitted during the three month period and not during the ten days following it. Naturally, there would have been no substantial compliance if the offers had been submitted *after* the ten day period. *See E. M. Boerke, Inc. v. Williams*, 28 Wis.2d 627, 137 N.W.2d 489, 492–93 (1965). For then defendants would not have received the benefit of timely notice. Such benefit was received, however, by an early notice and this deviation from the contract terms was insignificant. Therefore, there was a substantial compliance as to time as well as manner of notification and plaintiff is entitled to his commission.

We reverse the summary judgment for defendants and remand the case to the circuit court with directions to enter a summary judgment for plaintiff.

GUNN, P. J., and KELLY, J., concur.