**IRA E. BERRY, INC.,**
**Plaintiff-Appellant,**

v.

**John SLOAN, Defendant-Respondent.**

No. 46049.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 27, 1983.

Daniel P. Card, II, James B. Ashwell, Clayton, for plaintiff-appellant.

John Sloan, Homer Mastorakos, Chesterfield, for defendant-respondent.

SIMON, Presiding Judge.

Plaintiff, Ira E. Berry, Inc. (Berry), appeals from a judgment of the Circuit Court of the County of St. Louis in favor of defendant, John Sloan. The trial judge sustained Sloan's motion for a directed verdict at the close of Berry's case to recover a real estate broker's commission allegedly due it on the sale of real property owned by Sloan.

Berry contends the trial court erred in: (1) overruling their post trial motion to enter findings of fact and conclusions of law pursuant to Supreme Court Rule 73.01; and (2) sustaining Sloan's motion for directed verdict at the close of Berry's case because Berry had established by its evidence

that there was substantial compliance with the terms and conditions of the listing agreement. We reverse.

Where the trial court has sustained the defendant's motion for a directed verdict, we shall, on appeal, consider the evidence and all its reasonable inferences in a light most favorable to the plaintiff, but not in conflict with the plaintiff's theory of the case. *Fairmont Foods Co. v. Skelly Oil Co.,* 616 S.W.2d 548, 551[4] (Mo.App.1981); *Grossman Iron & Steel Co. v. Bituminous Casualty Corp.,* 558 S.W.2d 255, 258[1] (Mo. App.1977).

On November 1, 1978, Berry, a licensed real estate broker, entered into a listing contract with Sloan for the sale of his property located at 1399 Schoettler Road in Chesterfield, Missouri. The listing agent was Frances Sperling. The listing price was One Hundred Fifty Nine Thousand Nine Hundred Fifty Dollars ($159,950.00) or "for any other price and terms to which we [Seller] shall consent."

The listing contract in question was for a period of three months, and for an additional term of two (2) months following the expiration if:

"... the property is contracted by us [Seller] to be sold to, leased to, or exchanged with anyone contracted by or through said Realtor within the first period, and registered in writing with us within ten (10) days following the expiration of the first period, we will pay said Realtor a commission on the total selling, leasing, or exchange price, being six percent (6%) on improved property ...."

Following the execution of the listing agreement, Berry, through its agents, commenced marketing of the property. Among the potential purchasers to whom the property was shown by Berry during the initial three month period, was Charles L. and Inez M. Seeger. The property was shown to the Seegers by Berry's agent, Patricia Childs. Thereafter, on January 17, 1979, Childs submitted to Sloan on behalf of the Seegers, a written offer to purchase the subject property. An earnest money deposit of One Thousand Dollars ($1000.00) accompanied the written offer. Childs and listing agent Sperling conducted subsequent negotiations between the parties, including both oral and written offers and counter offers. However, these negotiations failed to result in a signed contract prior to the expiration of the initial three month term of the listing contract on January 10, 1979. The highest offer made by the Seegers through Berry during that initial three month period was One Hundred Thirty Thousand Dollars ($130,000.00). Berry did not submit within ten days from expiration of the contract a written list to Sloan indicating the prospective purchasers procured by Berry during the contract term. Subsequently, Sloan entered into a second listing contract with Gundaker Realtors for promoting the sale of the property. This Gundaker listing agreement precluded a sale commission to be paid to Gundaker by Sloan on any sale of the property to Charles L. and Inez M. Seeger.

On February 12, 1979, a sales contract was entered into between Sloan and Charles L. and Inez M. Seeger and Charles' mother and father, Quinten H. and Geanne Seeger, for the property. Quinten H. and Geanne Seeger had resided at the property adjoining Sloan's for some fifty-six years. The sale price of this contract was One Hundred Forty-Five Thousand Dollars ($145,000.00). The property was ultimately conveyed to the four Seegers on March 7, 1979.

This action came to trial before the circuit court without a jury. At the close of its evidence, Berry moved for a directed verdict, requesting the court to make findings of fact and conclusions of law, pursuant to Supreme Court Rule 73.01. The court indicated it would make findings of fact and conclusions of law and then overruled Berry's motion for directed verdict. Thereupon, Sloan filed a motion for directed verdict which the court sustained. No

findings of fact and conclusions of law appear in the record.

It is not necessary to address Berry's first point; our disposition of its second point is dispositive.

In its second point, Berry contends the trial court erred in granting Sloan's motion for directed verdict because Berry did in fact substantially comply with the terms and conditions of the listing agreement. We utilize a prior decision of our court, *Gundaker v. Templer*, 560 S.W.2d 306 (Mo. App.1977), as precedent.

The only factual difference between *Gundaker* and the case at bar is that here Seeger's parents were not involved in the original negotiations with Berry and Charles L. and Inez M. Seeger. In *Gundaker,* the purchasers remained the same throughout the negotiations and the sale. *Gundaker* holds, "A party's performance under a contract is substantial if the deviation from the contract was slight and if the other party received substantially the same benefit it would have from literal performance." *Id.* at 309[6–9].

■ Under *Gundaker*, Berry has substantially complied with the terms and conditions of the listing agreement. Certainly, the submission of the written list would have served no practical purpose considering offers and counter offers previously exchanged between the parties. *Id.* 309–310[6–9].

■ The critical issue is whether the addition of Charles L. Seeger's mother and father to the final sale contract is significant enough to distinguish this case from *Gundaker.* The listing agreement provides, "... the property is contracted by us [seller-Sloan] to be sold to, leased to, or exchanged with *anyone* contracted by or through said Realtor within the first period ..." (Emphasis added) The phrase "... anyone contracted by ...", is broad enough to include all these purchasers. The record indicates that the addition of the parents was for financial reasons. This is not a significant change in circumstances to conclude that the four Seegers, in essence, were different purchasers. Although Berry's performance under the listing contract was not literal, its deviation was slight. Essentially, Sloan received substantially the same benefits he would have received had Berry performed literally. *Gundaker,* supra. Consequently, we find that the trial court erred in sustaining Sloan's motion for a directed verdict and should have sustained Berry's.

Accordingly, we reverse and remand the judgment with directions to enter judgment for Berry in accordance with this opinion.

Reversed and remanded with directions.

STEPHAN and GAERTNER, JJ., concur.