**GATTERMEIR–ELLIOTT REAL ESTATE COMPANY, L.L.C., Plaintiff–Appellant,**

v.

**K.H., INC., JWB Land Company, L.L.C., BWJ Properties, L.L.C. and John Belt, Defendants–Respondents.**

No. 26874.

Missouri Court of Appeals, Southern District, Division One.

Feb. 22, 2006.

Thomas G. Pirmantgen, Jefferson City, MO, for Appellant.

Matthew F. Howard, Eldon, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

This is an appeal after a bench trial from a judgment in favor of the owner of commercial property and against a real estate broker. The broker contends that the owner leased property, which broker was hired to market and sell, to individuals that broker had "submitted" the property to and whose names were disclosed to the owner pursuant to the contract. The trial court found the following: by contract, the owner of the property reserved the right to sell the property itself; the broker did not submit the property to either of the lessees, nor participate in the negotiations leading up to the execution of the lease agreement; the broker did not comply with the requirements of the contract in order to be entitled to any commission; and, therefore, the broker had no right to a commission under the contract. We shall affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State ex rel. Nixon v. Alternate Fuels, Inc.*, 158 S.W.3d 811, 813 (Mo. App. S.D.2005). We affirm.

Gattermeir–Elliott Real Estate Co., L.L.C. ("Broker") brought a five-count petition against K.H., Inc., JWB Land Company, L.L.C., BWJ Properties, L.L.C. and John Belt[1] (collectively, "Owner"). In its petition, Broker contended that it originally entered into a contract on February 6, 2001, with K.H., Inc., to sell a business known as Backwater Jack's Restaurant ("the property"). Under the contract, Owner agreed to pay Broker compensation of 10% of the sale price for the property, on an exclusive agency basis, "when and if [Broker] produces a prospect ready, willing, and able to purchase the property at the sale price"; however, the parties agree that Owner reserved the right to sell the property on its own. The property was not sold during the initial period of the agreement; subsequently, JWB Land Company, L.L.C. and BWJ Properties, L.L.C. were added as parties to the agreement as "Owner"[2] and the sale price was changed to $1,525,000 on September 20, 2002.

The contract provided:

3. Owner will pay Broker compensation of 10% to be received when and if Broker produces a prospect ready, willing, and able to purchase the property at the sale price and on the terms listed below or later agreed upon, and the prospect indicates in writing an intention to purchase the property, with the parties recognizing that Broker is not authorized to bind Owner to execute a sale contract unless so authorized by Owner, in writing, and if a deposit is made on a sale and is then forfeited, one-half of the deposit (not to exceed the compensation which Broker would have been otherwise entitled to receive) will be paid to or retained by (as the case may be) Broker. In addition, Owner agrees to pay Broker a marketing fee of $____ on (check whichever applies) the date of this Agreement or the date that the other compensation above provided is payable.

4. Owner will pay Broker the above compensation if the property is sold, exchanged, or leased by any other person during the term of this Agreement or if a sale, exchange, or lease is made, directly or indirectly, within *360* days after the expiration of this Agreement or

---

1. John Belt was the sole principal of the owner corporations.

2. We do not recount the somewhat complicated history of the title of the property, as it is not relevant to any issue in this appeal.

any extension hereof, to any person to whom Broker has submitted the property and whose name was disclosed to Owner, in writing, by registered or certified mail within 10 days after the expiration of this Agreement or any extension hereof.

Broker further contended it submitted the property by its agent, Michael Elliott ("Elliott"), to Billy Borders ("Borders") and Gary Prewitt ("Prewitt"), the subsequent lessees, before the contract expired in November 2002, that Owner received written and other notice that Broker had submitted the property to Borders and Prewitt during the term of the Agreement, that Broker was the procuring cause of any sale, exchange or lease of the property, and the property was sold, exchanged or leased by Owner in November or December 2002, during the term of the agreement. Broker brought claims for a breach of contract, unjust enrichment, fraudulent misrepresentation, fraudulent concealment, and tortious interference with a business expectancy.[3]

Broker brings three points on appeal. First, it claims the trial court erred in concluding that its claim fails under section 429.616[4] because the statute only prohibits untimely suits based on a broker's lien and this suit is based on Broker's rights arising under the written contract and not the broker's lien.[5] Second, Broker contends the trial court erred in finding that the property was not submitted to the eventual lessees unless a physical showing and/or disclosure of financial or confidential information was made because the property was submitted when it was brought to the prospect's attention, as by advertising or introduction, with the intent that it be accepted. Finally, Broker contends the trial court erred in concluding that the property was not leased to Borders.[6]

■ In Point I, Broker challenges a finding by the trial court that Broker's claim fails under section 429.616[7] because the statute prohibits untimely suits that are based on a broker's lien and not for a suit brought on a breach of contract. Even though Broker had filed a lien against the property, Broker claims this particular action was not brought upon a broker's lien but upon the contract. A review of the petition clearly reflects that

3. The trial court granted a directed verdict to Owner on Counts III, IV, and V of the petition; Broker has not appealed from that judgment.

4. All references to statutes are to RSMo 2000, unless otherwise specified.

5. Thus, Broker is also abandoning any claims for unjust enrichment and proceeding on Count I, a breach of contract.

6. Borders and Prewitt both testified at trial that Borders did not participate in any negotiations in pursuit of the property. Prewitt approached Borders to be his partner in operating the restaurant after Prewitt had already negotiated a deal to lease the property with Owner; therefore, Borders became a subsequent lessee when he became a business partner to Prewitt. The trial court concluded that Prewitt or his company was the lessee in this case, not Borders.

7. Section 429.616 states:

A real estate broker may bring suit to enforce a lien which attaches pursuant to the provisions of sections 429.600 to 429.627 in the circuit court in the county where the property is located by filing a verified petition that the lien has been recorded. Unless the claim is based upon an option to purchase the commercial real estate, the broker claiming such lien must commence proceedings within six months after recording the lien and failure to commence proceedings within the six months shall extinguish the lien. A claim for the same lien, extinguished pursuant to this section and section 429.618, may not be asserted in any subsequent proceeding.

Broker did not bring a suit to enforce its claimed lien; however, it is not necessary to reach a determination concerning the exact meaning and effect of section 429.616 because the trial court gave judgment to Owner on Broker's claim for a breach of contract, notwithstanding Owner's claim that section 429.616 bars the action, and specifically found Broker did not have an action on the contract. Broker does not claim any other basis for a judgment on its behalf based upon the lien in any of its other points relied on and any discussion regarding a broker's lien claim would simply be an advisory opinion. This Court does not render advisory opinions. *State v. Self*, 155 S.W.3d 756, 761 (Mo. banc 2005); *Reeves v. Snider*, 115 S.W.3d 375, 380 (Mo.App. S.D.2003). We decline to review Point I.

Likewise, we do not address Point III, as a resolution of that issue would not affect in any way the disposition of this matter. Broker contends in Point III that the court erred in determining that a limited liability company, of which Borders was a member, was the actual lessee of the subsequent contract for a lease. Significantly, Broker does not contend it had a contractual relationship of any kind with Borders or the limited liability corporation and neither was named as a defendant in the original suit. An extended discussion of the factual determination made by the court in this regard would serve no purpose as it does not aid in the resolution of the issue before this Court, whether Broker is entitled to a commission on its written contract with Owner.

We will proceed to the crux of this appeal, Point II, in which Broker contends that the trial court erred in declaring the law when it concluded that the property was not "submitted" to a prospective purchaser unless a physical showing and/or disclosure of financial or confidential information was made because the law is contrary in that it has been held that a property is "submitted" to a prospect when it is brought to the prospect's attention as by advertising or introduction, and with the intent that it be accepted.

In its point relied on, Broker directs our attention to the language of Paragraph 4 [8] of the contract, which allows recovery of compensation if Broker "submitted" the property to the eventual lessee, and states:

> 4. Owner will pay Broker the above compensation if the property is sold, exchanged, or leased by any other person during the term of this Agreement or if a sale, exchange, or lease is made, directly or indirectly, within *360* days after the expiration of this Agreement or any extension hereof, to any person to whom Broker has submitted the property *and whose name was disclosed to Owner, in writing, by registered or certified mail within 10 days after the expiration of this Agreement or any extension hereof.*

(emphasis added).

■ Although Broker focuses on the issue of whether the property was "submitted" to the eventual lessee, it glosses over another specific clause of the contract, which mandates that Broker disclose to Owner, in writing, by registered or certified mail within 10 days after the expiration of the agreement or any extension, any person to whom Broker claimed to have submitted the property. Although Broker admits it did not make any attempt to comply with the second provision of the contract, Broker claims the re-

---

**8.** It is undisputed that pursuant to the express terms of paragraph 3 of the contract, Broker did not "produce" a "prospect ready, willing and able to purchase the property at the sale price and on the terms listed." Broker does not claim otherwise.

quirement was nonetheless met because, while the contract was pending, it sent written notice of persons to whom the property was "submitted" in the form of progress reports. Broker relies upon the testimony of its agent, Elliott, that on May 14, 2002, he sent a "property viewing report" to Owner to inform them about Borders. The report stated, "I gave color brochure, Maggie Mae's restaurant will close in a few days, shows interest, who knows." Initially, we note it is not clear from the court's findings that the trial court believed Elliott regarding the progress report. The court made a finding that Broker, through its agent, Elliott, when directly asked, admitted that he had done nothing to submit the property to Borders, admitted that he had not submitted the property to Borders and claimed he was due a commission simply because he was the listing agent and that Borders knew he was the listing agent. Nevertheless, even assuming at this juncture that the court resolved that issue in favor of Broker, Broker's claim still fails.

Broker relies upon *Gundaker v. Templer*, 560 S.W.2d 306 (Mo.App.St.L.D. 1977), for the proposition that the property viewing reports submitted by Broker were substantial compliance with the second provision of the contract. It contends that the failure to notify Owner in writing within ten days after the contract ended was a "slight deviation" from the contract and thus Broker provided substantial compliance as to time as well as manner of notification and was entitled to a commission under the contract. We disagree.

Broker's reliance upon *Gundaker* is misplaced. In *Gundaker*, at issue was an exclusive listing contract, not a contract as here where it was agreed that Owner could negotiate and sell the property with no obligation to Broker. *Id.* at 307. Additionally, *Gundaker* involved a situation in which the broker actually submitted written, successive contracts to the owners of the property on behalf of the buyers, who eventually purchased the property, and the owners made counteroffers on each of the offers. *Id.* at 308. Significantly, Broker did not produce any written offers or negotiations between Owner and lessees in the case before us. In *Gundaker*, the final, successful agreement for the sale of the property between the same buyers and same sellers was made two weeks after the listing expired. *Id.* Again, there were no negotiations, no offers, and no counteroffers produced by Broker on behalf of these lessees to Owner. Any negotiations occurring between Owner, who had a right to negotiate and sell the property, and the lessees do not assist Broker.

Finally, the contract in *Gundaker* was substantially different from the provision sought to be enforced in this case. The contract in *Gundaker*, which was a form provided by the broker, read in part:

> If within three (3) months after date of this listing, a ready, willing and able purchaser is produced by the undersigned Realtor, or by us, [owners] or by any other person, or if said property shall be contracted by us to be sold to, leased to, or exchanged with any person procured by the undersigned Realtor, or by us, by any other person, or if within an additional term of two (2) months the property is contracted, by us to be sold to, leased to, or exchanged with *anyone contacted by or through said Realtor within the first period, and registered in writing with us within ten (10) days following the expiration of the first period*, we will pay said Realtor a commission on the total selling, leasing, or exchange price of 6 percent.

*Id.* at 307–08 (emphasis added). Clearly, the *Gundaker* court analyzed the language "registered in writing with us," and deter-

mined a slight deviation occurred in compliance with the contract because the language in the contract simply required the broker to provide sellers, at some time, with a list or the like and the sellers had received written notice of the buyers in the form of the written offers. *Id.* at 309.

The issue before us is not whether Owner had one "list" of prospective buyers. The purpose of Paragraph 4 in this contract is only susceptible of one meaning, that Owner will have written notice from Broker, with the formality of registered mail so that there is no dispute whether the notice was given, of the legal obligation to pay a commission for any persons to which Broker claims it has submitted the property. Sending progress reports during the listing period of Broker's activities is not a slight deviation of the explicit provisions of the contract and does not relieve Broker of those provisions. At issue is a commission in the amount of $152,500. It defies logic that if Broker determined that it had "submitted" the property to the eventual lessees that it would not protect itself by sending a registered letter, pursuant to the contract, to Owner. Such action benefits Broker and Owner by allowing both parties to base future actions on any claims that Broker submitted the property to a potential buyer or lessee. Broker simply did not comply with its own contract to notify Owner in the proper manner of its claim that it had submitted the property to the lessees. As such, the court did not err by entering judgment for Owner. Point II is denied.

The judgment is affirmed.

BATES, C.J., McGHEE, Senior Judge, concur.

PARRISH, J., recused.